# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 495 | **DATE** | 8/21/2003 |
| **CASE TITLE** | Renteria vs. Italia Foods, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10)■ [Other docket entry] Plaintiff's motion for summary judgment (40-1) and defendants' motion for summary judgment (36-1) are granted in part and denied in part. The Court has determined certain issues with regard to counts 1 and 2 of the second amended complaint, while other issues regarding these claims remain for trial. Counts 3 and 4 remain for trial. Summary judgment is entered in defendants' favor on count 5. Plaintiffs' motion to dismiss certain counts of the counterclaim (61-1) is granted in part and denied part; claims 7 and 8 of the counterclaim are dismissed for failure to state a claim. Plaintiffs are ordered to answer the remaining claims on or before 8/28/03.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | **Document Number** |
|---|---|---|---|---|---|
| | No notices required. | | number of notices | | |
| | Notices mailed by judge's staff. | | | | |
| | Notified counsel by telephone. | | AUG 2 5 2003 | | |
| ✓ | Docketing to mail notices. | | date docketed | | 81 |
| | Mail AO 450 form. | | | | |
| | Copy to judge/magistrate judge. | | dockering deputy initials | | |
| OR6 | courtroom deputy's initials | | date mailed notice | | |
| | | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOSE RENTERIA, DANIEL ADAN, J. SOCORRO OLVERA, GABRIELA OLVERA, ROSA ADAN, JUAN FRANCISCO CORNEJO, JOSE LUIS MONTOYO, and LUIS ANGEL REYES, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. 02 C 495 |
| ITALIA FOODS, INC., PETER CARABETTA, FELIPPO CARABETTA, and NICOLINA CARABETTA, | ) ) ) ) | |
| Defendants. | ) | |

DOCKETED

AUG 2 5 2003

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiffs are former employees of defendant Italia Foods. Defendants Peter Carabetta,

Felippo Carabetta, and Nicolina Carabetta own Italia Foods, which manufactures frozen Italian

food products for distribution to supermarkets. Plaintiffs claim that defendants violated the Fair

Labor Standards Act of 1938, 29 U.S.C. §§ 201-19 (count 1), and the Illinois Minimum Wage

Law, 820 ILCS 105 (count 2), by failing to compensate plaintiffs at a rate of "time and one-half"

for hours worked over forty per week. Certain plaintiffs also claim that defendants violated the

FLSA by discharging them in retaliation for joining this lawsuit (count 3). In addition, plaintiff

Jose Renteria claims that defendants violated the Illinois Wage Payment and Collection Act, 820

ILCS 115/1-115/15 (count 4), for failing to compensate him for all hours worked and to pay him

earned vacation pay, and plaintiff Daniel Adan complains of retaliatory discharge under Illinois

*81*

law (count 5). Italia has counterclaimed against Rentería for restitution and unjust enrichment and against Juan Cornejo for fraud. This case is presently before the Court on cross motions for summary judgment and certain plaintiffs' motion to dismiss certain counts of Italia's counterclaim.

## Failure to Pay Overtime Wages

Plaintiffs contend that defendants violated the FLSA and the IMWL by failing to pay them appropriate overtime wages. Both acts obligate an employer to compensate its employees at one and one-half times the regular rate for all hours worked over forty per week. The FLSA states that

> no employer shall employ any of his employees who in any workweek is . . . employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1). Apart from permitting recovery of unpaid overtime wages, the FLSA also permits plaintiffs to receive "an additional equal amount" as liquidated damages. *Id.* § 216(b). Where a FLSA violation has occurred, "double damages are the norm." *Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 310 (7th Cir. 1986). To avoid liquidated damages, the employer bears the burden of demonstrating that its violation of the Act occurred in a good faith, reasonable belief that its actions were not illegal. If an employer

> shows to the satisfaction of the court that the act or omission giving rise to [the action under the Act] was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA] the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed [double damages].

29 U.S.C. § 260.

The Illinois Minimum Wage Law establishes a similar compensation scheme. The Act provides that "no employer shall employ any of his employees for a workweek of more than 40 hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than 1½ times the regular rate at which he is employed." 820 ILCS 105/4a(1). The IMWL further provides for punitive damages of 2% of any such underpayments "for each month following the date of payment during which such underpayments remain unpaid." 820 ILCS 105/12(a). Punitive damages are available only if the "employer's conduct is proven by a preponderance of the evidence to be willful." *Id.* Thus under the Illinois statute, the plaintiff bears the burden of proving willfulness.

The factual predicate for plaintiffs' FLSA and IMWL claims is undisputed. Prior to November 1999, plaintiffs were properly compensated at time and one-half for all overtime hours. Pls.' Resp. to Defs.' Rule 56.1 Statement of Facts ¶ 32. As of November 1999, Italia began compensating plaintiffs for overtime hours at their regular hourly rate. For the first pay period in which this occurred, Italia withheld proper tax deductions from plaintiffs' paychecks. From that time forward, however, Italia compensated plaintiffs for overtime hours by paying them straight time without any deductions. The reason for this shift from appropriate overtime compensation to this arrangement is disputed -- defendants claim that plaintiffs requested to be compensated in this manner, Felippo Carabetta Dep. at 62, and plaintiffs contend that defendants instituted the change because they did not want to incur the expense of paying overtime wages, *see, e.g.*, Montoya Dep. at 30-31, or the expense of withholding taxes, *see, e.g.*, Adan Dep. at 53-54, 63. The reason for the violation, however, is immaterial to plaintiffs' claim for unpaid overtime. *See Walton*, 786 F.2d at 306 ("[T]he Fair Labor Standards Act is designed to prevent

3

consenting adults from transacting about minimum wages and overtime pay."); 820 ILCS 105/12 ("[A]ny agreement between [an employee] and his employer to work for less than [the wages provided by the IMWL] is no defense to such action."). By failing to pay time and one-half for overtime work, defendants violated both Acts and are liable for the additional "half time" they failed to pay.

Defendants do not dispute the amount of unpaid overtime wages. They do, however, dispute the amount plaintiffs are entitled to receive in this lawsuit. Defendants argue that any award should consist of wages net of taxes. Plaintiffs contend that their award of delinquent "half time" should consist of gross wages. *See* Pls.' Mem. of Law in Supp. of their Mot. for Summ. J. at 3 - 4. Not surprisingly, plaintiffs cite absolutely no authority for this position; they are not entitled to receive delinquent overtime compensation "tax free." Rev. Rul. 72-268, 1972-1 C.B. 313 (amounts paid pursuant to the FLSA for unpaid overtime compensation are "wages" for purposes of federal employment taxes and income tax withholding); 86 Ill. Adm. Code 100.7030 (payments to Illinois employees "shall be subject to withholding of Illinois income tax if such payments are subject to withholding of federal income tax"). Defendants may deduct, as required by law, *see* 26 U.S.C. § 3402(a)(1); 86 Ill. Adm. Code 100.7030, any taxes they would have been required to withhold from the delinquent amounts had they been paid normally. *Cf. Ford v. Kaufman*, No. 84 C 10607, 1985 WL 584, at *1 (N.D. Ill. Apr. 15, 1985) (ordering an award for delinquent overtime compensation minus deductions for social security and taxes); *Archie v. Grand Cent. P'ship, Inc.*, 86 F. Supp. 2d 262, 273 (S.D.N.Y. 2000) (stating that in the FLSA context "courts are generally of one mind that withholding from back wages must be made" and citing cases).

Defendants also argue that they are also entitled to subtract from the amount owed all the deductions they failed to withhold from the amounts they previously paid plaintiffs for overtime. The FLSA permits an employer to credit certain payments against any overtime it owes. Specifically, 29 U.S.C. § 207(h)(2) provides that "[e]xtra compensation paid as described in paragraphs (5), (6), and (7) of subsection (e) of this section shall be creditable towards overtime compensation payable pursuant to this section." Although defendants maintain, presumably pursuant to this provision, that "[p]ayments or overpayments to employees in a form other than overtime compensation reduce the amount of unpaid overtime compensation premiums due," Defs.' Mot. for Summ. J. at 5, they do not argue that any of the listed subsections apply.[1] The statute is specific in what types of payments are permissible credits against overtime pay; delinquent withholding deductions are not among them. Moreover, defendants cite no authority for the proposition that plaintiffs must reimburse defendants for amounts that should have been

---

[1]These subsections include:
(5) extra compensation provided by a premium rate paid for certain hours worked by the employee in any day or workweek because such hours are hours worked in excess of eight in a day or in excess of the maximum workweek applicable to such employee under subsection (a) of this section or in excess of the employee's normal working hours or regular working hours, as the case may be;
(6) extra compensation provided by a premium rate paid for work by the employee on Saturdays, Sundays, holidays, or regular days of rest, or on the sixth or seventh day of the workweek, where such premium rate is not less than one and one-half times the rate established in good faith for like work performed in nonovertime hours on other days;
(7) extra compensation provided by a premium rate paid to the employee, in pursuance of an applicable employment contract or collective-bargaining agreement, for work outside of the hours established in good faith by the contract or agreement as the basic, normal, or regular workday (not exceeding eight hours) or workweek . . . .
29 U.S.C. § 207(e).

withheld by the employer but were not. Defendants therefore may not deduct from the overtime amounts still owed any amounts that previously should have been withheld.

The Court likewise rejects defendants' argument that they are entitled to offset against the amounts owed to certain plaintiffs sums that they contend these plaintiffs were improperly overpaid or that they allegedly received as a result of fraud. Again, such offsets are not among those permitted under the FLSA.

## Limitations Period on FLSA Overtime Claims

Plaintiffs argue that they are entitled to unpaid overtime compensation reaching back three years from the date this suit was filed. An employer is liable for three years of back wages if the FLSA violation was "willful," but only two years if it was not. 29 U.S.C. § 255(a). This lawsuit was filed in January 2002. An employer's violation of the FLSA is "willful" for purposes of determining the limitations period if the employer either knew or acted with reckless disregard for whether its conduct was prohibited by the Act. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). Willful behavior is conduct that is more than simply negligent or unreasonable. *Id.*; & n.13. In *Walton v. United Consumers Club, Inc., supra*, a FLSA case, the Seventh Circuit described "willfulness" as "denoting a range of culpability from gross negligence to actual knowledge plus malice depending on the context. Usually it denotes some highly culpable mental state either actual knowledge that one's acts violate the law or reckless indifference to the law." *Walton*, 786 F.2d at 308-09 (citations omitted). The plaintiff in a FLSA case bears the burden of establishing willfulness, *id.* at 308, which "requir[es] proof that 'the defendant's actions were knowing and voluntary and that he knew or reasonably should have known that those actions violated' the statute," *id.* at 312 (quoting *Herman v. National*

6

*Broadcasting Co.*, 744 F.2d 604, 607 (7th Cir. 1984)).

Although the record establishes that the shift in overtime compensation was deliberately undertaken by the defendants, it is genuinely disputed whether plaintiffs can establish a "highly culpable mental state" on defendants' part. In other words, plaintiffs have not submitted evidence conclusively establishing that defendants acted with knowledge that the compensation scheme violated the law or with reckless indifference on this point. *Cf. Bankston*, 60 F.3d at 1254 ("It is easier for a plaintiff to receive liquidated damages under the FLSA than it is to extend the statute of limitations for FLSA claims. . . ."). Plaintiffs will thus have to prove willfulness at trial in order to be able to recover damages under the FLSA relating to overtime worked before January 22, 2000.

**Liquidated and Punitive Damages**

Plaintiffs maintain that they are entitled to liquidated (double) damages under the FLSA and punitive damages under the IMWL. Until 1947, double damages were mandatory for FLSA violations. In that year, Congress passed the Portal-to-Portal Act, section 11 of which allows a district court, "in its sound discretion," to award a lesser amount of liquidated damages or none at all. 29 U.S.C. § 260. However, because the FLSA incorporates a "strong presumption" in favor of liquidated damages, to avoid them an employer must demonstrate that it acted in good faith and with a reasonable belief that its conduct did not violate the Act. *Walton*, 786 F.3d at 310; *see Avitia v. Metro. Club of Chicago, Inc.*, 49 F.3d 1219, 1226 (7th Cir. 1995). Instances where doubling may not be appropriate, for example, include where "the violation was technical or inadvertent." *Walton*, 786 F. 2d at 308.

As stated above, the parties dispute who instigated the shift in overtime compensation.

Even were events to have occurred according to defendants' version, however, defendants must show that their compliance with plaintiffs' alleged request was in good faith and that they had a reasonable basis for believing that the shift did not violate the FLSA. 29 U.S.C. § 260. Defendants fail to do so. They have adduced absolutely no evidence to this effect. In fact, all the evidence in the parties' submissions points the other way. Defendants plead ignorance of the Act's requirements, stating that they "are neither college graduates nor experts in accounting." Defs.' Resp. to Pls.' Mot. for Summ. J. at 7. But the fact that overtime wages were paid in compliance with the FLSA until November 1999 indicates that defendants were aware of their obligation to pay time and one-half for hours worked over forty per week. In any case, an employer's ignorance of the Act or its requirements does not constitute reasonable grounds for believing it was in compliance. *Sinclair v. Auto. Club of Okla., Inc.*, 733 F.2d 726, 730 (10th Cir. 1984); *Marshall v. Brunner*, 668 F.2d 748, 753 (3d Cir. 1982). Because defendants have failed to meet their "substantial burden," liquidated damages under the FLSA are appropriate. *Bankston v. State of Illinois*, 60 F.3d 1249, 1254 (7th Cir. 1995).

Plaintiffs maintain that they are also entitled to punitive damages under the IMWL. This statute employs a different standard of proof than the one that governs awards of liquidated damages under the FLSA. Under the IMWL, punitive damages are appropriate only if plaintiffs prove that defendants' conduct was willful. 820 ILCS 105/12(a).[2] As discussed in the previous section, an issue of fact exists regarding whether defendants acted willfully. Whether punitive damages are available is thus a matter to be determined at trial.

---

[2]Defendants argue that punitive damages are available only in actions brought by the Illinois Department of Labor, not in private civil actions. They do not, however, cite any authority for this proposition, and the Court has not uncovered any in its own research.

8

**Liability of the Carabettas**

Plaintiffs argue that the Carabettas, as owners with operational control over Italia Foods, are jointly liable with Italia for the FLSA and IMWL violations. *See, e.g.*, *Donovan v. Agnew*, 712 F.2d 1509, 1511 (1st Cir. 1983). Defendants have not responded to this argument and thus are deemed to have conceded the point.

**FLSA Retaliatory Discharge**

The FLSA prohibits an employer from "discharg[ing] or in any other manner discriminat[ing]" against an employee for asserting a FLSA claim. 29 U.S.C. § 215(a)(3). In count 3, plaintiffs J. Socorro Olvera, Gabriela Olvera, Cornejo, Montoya and Reyes claim that they were fired from Italia Foods when Felippo Carabetta learned they had joined this lawsuit. Defendants argue that plaintiffs were never fired but rather were merely sent home early on the afternoon of January 29, 2002.[3]

On the afternoon of January 29, Felippo Carabetta learned that the Olveras, Cornejo, and Montoya had joined the lawsuit originally filed by Renteria and Daniel Adan. Felippo Carabetta Dep. at 64. He says that he came to the production floor where plaintiffs were working and "told everybody go home for the day, no more work today." *Id.* at 68. Defendants maintain that the early shutdown was an initial reaction to a possible emergency situation and that it was not intended as a termination of plaintiffs' employment. Specifically, Felippo testified that as a

---

[3]Count 2 of the Second Amended Complaint names Rosa Adan as a plaintiff claiming retaliatory discharge. However, she seems to have dropped out of this claim. *See* Pls.' Mot. For Summ. J. ¶ 10; Pls.' Am. Resp. to Defs.' Mot. for Summ. J. at 9 (naming only Socorro Olvera, Montoyo, Cornejo, and Gabriela Olvera as the "January 29, 2002 Plaintiffs"). And that would make sense, as it appears that she was no longer worked for Italia Foods on this date. Felippo Carrabetta Dep. at 50, 90.

result of the lawsuit, he feared plaintiffs might tamper with the food and that not enough family members were present at the plant to supervise the workers. *Id.* at 72. He feared tampering because the complaint alleged food adulteration, and he was concerned that plaintiffs would sabotage the food in order to prove their case. *Id.* at 67. By contrast, plaintiffs have testified that Felippo said, "no more Italia Food, everybody go home now" and that they understood he was sending them home for good. Cornejo Dep. at 8; *see* J.Socorro Olvera Dep. at 7; Gabriela Olvera Dep. at 9; Montoya Dep. at 13. If plaintiffs' testimony is believed, a jury reasonably could find that they had been terminated. For these reasons, a genuine issue of fact exists as to whether a termination actually occurred. Both sides' motions for summary judgment are therefore denied as to the claims of these plaintiffs.

The facts pertaining to Reyes's alleged discharge are somewhat different. His last day at Italia Foods was January 28, 2002. He claims that on that day Peter Carabetta sent him home early. But Reyes conceded at his deposition that he was told he was being sent home because there was no work for him and that he did not know whether this meant permanently or just for the day. Reyes Dep. at 6. As Reyes himself cannot say he believed he was being sent home permanently, no reasonable jury could find he was fired. Defendants are entitled to summary judgment on Reyes's retaliation claim.

### Damages for FLSA Retaliatory Discharge

Defendants maintain that if the Olveras succeed on their retaliatory discharge claim, they are not entitled to back pay, front pay, or compensatory damages because they were not legally authorized to work in the United States at the time of the events in question. In *Hoffman Plastic Compounds, Inc. v. NLRB*, 122 S. Ct. 1275 (2002), the Supreme Court noted that the

Immigration Reform and Control Act of 1986, Pub. L. No. 99-603, 100 Stat. 3359 (codified as amended at 8 U.S.C. § 1324), constitutes a "comprehensive scheme prohibiting the employment of illegal aliens in the United States" and that it "forcefully" made combating the employment of illegal aliens central to immigration law policy. *Id.* at 1282. Under the IRCA's scheme, the Court held, an award of back pay to a worker discharged in violation of the National Labor Relations Act "runs counter to policies underlying the IRCA," *id.* at 1283, and would

> unduly trench upon explicit statutory prohibitions critical to federal immigration policy, as expressed in [the Immigration Reform and Control Act of 1986]. It would encourage the successful evasion of apprehension by immigration authorities, condone prior violations of the immigration laws, and encourage future violations.

*Id.* at 1284.

Defendants argue that an award of back pay, front pay, or compensatory damages for a violation of the FLSA likewise would trench on the policies expressed in the IRCA. With regard to back pay and front pay, the Court agrees. The policies that motivated the enactment of the IRCA are certainly subject to debate, but the IRCA is the law of the land, and the Supreme Court has made it clear that awarding back pay to undocumented aliens contravenes the policies embodied in that law. An award of front pay would be inappropriate for the same reason: front pay essentially assumes that the worker will continue to work for the employer in the future, which is against the law for an undocumented alien. We reach a different conclusion, however, regarding compensatory damages. In *Hoffman Plastic,* the Supreme Court did not preclude the NLRB from taking *any* remedial action for the employer's improper firing of an undocumented worker; it expressly preserved the NLRB's ability to issue injunctive and declaratory relief. *Hoffman Plastic,* 122 S. Ct. at 1286. The remedy of compensatory damages, unlike those of back

11

pay and front pay, does not assume the undocumented worker's continued (and illegal) employment by the employer. We therefore agree with the court in *Singh v. Jutla & C.D. & R's Oil, Inc.*, 214 F. Supp. 2d 1056, 1061-61 (N.D. Cal. 2002) – as best we can tell, the only post-*Hoffman Plastic* decision to address the point – that compensatory damages for retaliatory termination under the FLSA remain available to undocumented workers. For these reasons, the Olveras' claims for back pay and front pay are stricken, but their claim for compensatory damages remains for trial.

**Illinois Retaliatory Discharge**

Defendants move for summary judgment on Daniel Adan's state law claim of retaliatory discharge. Count 5 of the Second Amended Complaint alleges that Daniel Adan was terminated from his employment at Italia Foods because of his persistent complaints regarding the cleanliness and safety conditions of the manufacturing facility, especially the use of spoiled food products. Although an at-will employee is generally subject to discharge for any reason or no reason at all, Illinois law recognizes an exception for the tort of retaliatory discharge. To establish a cause of action for retaliatory discharge, a plaintiff must demonstrate that (1) he was discharged; (2) his discharge was in retaliation for his activities; and (3) the discharge violates a clear mandate of public policy. *Zimmerman v. Buchheit of Sparta, Inc.*, 164 Ill. 2d 29, 35, 645 N.E.2d 877, 880 (1994).

Adan has no problem demonstrating the third element; compliance with health codes in the food industry is "a public concern of the highest magnitude." *Lanning v. Morris Mobile Meals, Inc.*, 308 Ill. App. 3d 490, 493, 720 N.E.2d 1128, 131 (1999). Adan's proof fails, however, on the second element of this tort, which requires him to have some evidence, either

12

direct or circumstantial, of a causal link between his complaints and the employment action. *Hartlein v. Ill. Power Co.*, 151 Ill. 2d 142, 160, 601 N.E.2d 720, 728 (1992). Regarding causation, "the ultimate issue to be decided is the employer's motive in discharging the employee." *Id.* at 163, 601 N.E.2d at 730. The element of causation is not met if "the employer has a valid basis, which is not pretextual, for discharging the employee." *Id.* at 160, N.E.2d at 728.

Adan testified that he often complained to Peter and Felippo Carabetta about spoiled food during the course of his employment from 1999 to 2001; their response was that Adan should throw away any spoiled food that he encountered. Adan Dep. at 13, 16. In fact, Peter gave Adan the responsibility of filling out a U.S. Department of Agriculture logbook. *Id.* at 44. His responsibility was "to inspect all the working equipment, the machines, the containers, . . . the floor, the tables for everything to be clean." *Id.* Adan does not contend that there were any negative repercussions when he reported unsanitary conditions in the logbook. *Id.* at 45. Moreover, it was Peter who explained to Adan how to detect when pasta had gone bad and needed to be disposed of. *Id.* at 49. However, Adan does claim that when Nicolina Carabetta was at the plant, she insisted that the spoiled pasta not be disposed of, but rather combined with the good pasta. He maintains that around September 2001, he found spoiled pasta and threw it away. When Nicolina arrived later that day, she asked for the pasta, and Adan admitted to disposing of it. According to Adan, Nicolina became upset, complaining about the money wasted by throwing away the pasta. Adan then spoke with Peter, who repeated that he should not mix in spoiled pasta but should throw it away, regardless of Nicolina's instructions. *See id.* at 19. After this incident, Adan alleges having voiced additional complaints about spoiled food in

13

September and early October 2001. *Id.* at 20.

The last day Adan worked at Italia Foods was December 21, 2001, with the next possible work day being December 26. *Id.* However, he was not fired or asked not to return to work on that day. According to Adan, Italia Foods did not always need him to work a full forty hours per week. *Id.* at 26. Because hours were somewhat irregular, Adan would know that he was needed at work if he received a telephone call from Peter Carabetta the night before *Id.* at 27. According to Peter Carabetta, he tried calling Adan several times to report for work between December 26 and December 31, 2001, but no one answered. Peter Carabetta Aff. ¶¶ 2, 3. Peter Carabetta's allegation that he attempted to reach Adan but was unsuccessful is consistent with Adan's testimony that he was experiencing telephone problems in December 2001 that caused him to miss many calls. Adan Dep. at 33. He acknowledges that if Peter tried to call him, it is probable that he would not have received the calls because of his telephone problems. *Id.* at 32. When Adan came to Italia Foods in early January to find out why he had not been called in to work, Nicolina told him that attempts had been made to reach him. Adan Dep. at 37, 38. According to Nicolina, she asked him why he did not report for work at the end of December or call to explain his absence. Nicolina Carabetta Aff. ¶ 8. He lied to Nicolina and told her that he had been to visit a sick relative in Texas. Adan Dep. at 51-52. Nicolina claims that she knew this explanation was a lie because one of Adan's co-workers at Italia Foods had told her that Adan had been working another full-time job and was therefore unable to work at Italia Foods during much of the last two weeks of December 2001. Nicolina Carabetta Aff. ¶ 5. Nicolina claims that she confronted him with this information and that Adan admitted that the reason he had missed work at Italia Foods was so that he could work his second job. *Id.* ¶ 13. Although

14

Adan did in fact work a second job in December 2001 – working 30 hours in the pay period ending December 23 – he claims he was working the second shift and that it did not interfere with his work at Italia Foods. *See* Adan Dep. at 23. Nicolina claims that he was fired because of his unexplained absence and the fact that he lied about being in Texas when in fact he was working another job. Nicolina Carabetta Aff. ¶ 11.

Adan maintains that it was Peter's decision to terminate Adan's employment and that Nicolina's version of why he was fired is irrelevant. *See* Pls.' Amended Resp. to Defs.' Mot. for Summ. J. at 17. And despite Adan's confrontation with Nicolina, he maintains that the decision to terminate Adan was not hers. *Id.* It would make no sense, however, for Peter to encourage Adan to dispose of spoiled food, instruct him on how to detect spoiled pasta, and put him in charge of sanitary inspections, as Adan has testified, and then fire him for bringing food spoilage to his attention. In light of Peter Carabatta's admitted encouragement of Adan's disposal of spoiled food, the complete lack of evidence of a retaliatory animus on Peter's part, the legitimate reasons for discontinuing Adan's at-will employment, and the temporal distance between his final complaint – which was at the latest sometime in early October – and his last day of employment in late December, Adan has failed to provide evidence from which a reasonable jury could find a causal connection between his complaints and termination. Because of this complete failure of proof on an element on which he will bear the burden at trial, summary judgment in defendants' favor is appropriate on this count. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

15

## Plaintiffs' Rule 26(a)(1) Disclosures

Defendants argue summary judgment should be entered in their favor on plaintiffs'

retaliatory discharge claim and Renteria's Illinois Wage Payment and Collection Act claim

because of deficient Rule 26(a)(1)(C) disclosures. Federal Rule of Civil Procedure 26(a)(1)(C)

provides that a plaintiff must provide a computation of any damages claimed and make available

for inspection and copying the documents or evidentiary material bearing on the nature and

extent of the injuries suffered. Defendants maintain that plaintiffs' initial and supplemental

disclosures do not contain the required information. Under Rule 37 (c)(1), "a party that without

substantial justification fails to disclose information required by Rule . . . 26(a)(1)(C) shall not,

unless such failure is harmless, be permitted to use as evidence at trial, at a hearing, or on a

motion any witness or information not so disclosed." However, defendants took the deposition

of every plaintiff and during these depositions had ample opportunity to gather information

regarding damages. Defendants have not been prejudiced by the allegedly deficient initial

disclosures, and their request for summary judgment on this ground is denied.

## Motion to Dismiss Counterclaim

Plaintiffs Renteria and Cornejo have moved to dismiss counts 1, 7, and 8 of Italia's

counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6). Dismissal for failure to state

a claim is appropriate only if "it appears beyond doubt that the plaintiff can prove no set of facts

in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46

(1957).

Count 1 of the counterclaim alleges unjust enrichment by Renteria. Italia Foods, which

offered medical and life insurance to its employees and their dependants, contends that Renteria

16

was unjustly enriched because he falsely claimed that his girlfriend, Margarita Herrera, was his spouse in order that Italia Foods would provide her with insurance coverage. To state a claim of unjust enrichment under Illinois law, Italia need only allege that "there has been unjust retention of a benefit by one party to the detriment of another against the fundamental principles of justice and equity." *Firemen's Annuity and Benefit Fund v. Mun. Employees', Officers', and Officials' Annuity and Benefit Fund*, 219 Ill. App. 3d 707, 712, 579 N.E.2d 1003, 1007 (1991). "[T]he essence of the cause of action is that one party is enriched and it would be unjust for that party to retain the enrichment." *Id.* Italia has met this threshold. Italia alleges that Renteria received a benefit – medical insurance for his live-in girlfriend – and that it was to the detriment of defendant, who paid the premiums for her in the mistaken belief that Herrera was Renteria's spouse. *Cf. Trs. of AFTRA Health Fund v. Biondi*, 303 F.3d 765, 782 (7th Cir. 2002) (stating that because ERISA's civil enforcement provisions do not provide a remedy "for situations where a employee benefit trust fund has been defrauded by a non-fiduciary . . . garden-variety state-law tort claims must, as a general matter, remain undisturbed" by ERISA's preemption clause). Renteria's motion to dismiss count 1 of the counterclaim is therefore denied.

Count 8 of the counterclaim seeks restitution from Renteria pursuant to ERISA. ERISA permits the fiduciary of a benefit plan, which Italia Foods claims to be, to bring a civil action to obtain equitable relief to redress violations of a plan's terms. 29 U.S.C. § 1132(a)(3)(B)(i). Italia seeks restitution in the amount of the premiums paid on behalf of Herrera. Defendant cannot maintain a restitution action under ERISA, however, because the Act "does not provide *any* mechanism for plan administrators or fiduciaries to recoup monies defrauded from employee benefit trust funds by plan participants." *Trs. of AFTRA Health Fund*, 303 F.3d at 782 (emphasis

17

in original).  Count 8 is therefore dismissed.

Count 7 of the counterclaim alleges fraud by Cornejo in that he applied for and received unemployment benefits when in fact he was not eligible for them.  Italia contends that Cornejo misrepresented to the Illinois Department of Employment Security that he was involuntarily unemployed and actively seeking employment.  Defendant maintains that both representations are false and were made with the intention of falsely securing unemployment benefits and that IDES relied on the misrepresentations in awarding him benefits.  Italia Foods also maintains that as a result of Cornejo's alleged misrepresentations, it has been injured in an amount equal to the increased premiums it must pay for unemployment compensation insurance.

Italia, however, has not alleged the necessary elements of fraud.  Under Illinois law, a plaintiff in a fraud action must show "'a false statement of material fact made by defendant, defendant's knowledge or belief that the statement was false, *defendant's intent to induce plaintiff to act*, and *action by plaintiff in justifiable reliance on that statement*, and damage to plaintiff resulting from such reliance.'"  *Dresser Indus. Inc. v. Pyrrhus AG*, 936 F.2d 921, 934 (7th Cir. 1991) (quoting *Commercial Credit Equip. Corp. v. Stamps*, 921 F.2d 1361, 1366 (7th Cir. 1990)) (emphasis in original).  Italia does not allege, nor could it, that Corejo made the statements to Italia in the anticipation that Italia would rely on them.  The statements, whether true or false, were made to IDES in the anticipation that it would rely on them to confer unemployment benefits.  Count 7 is therefore dismissed for failure to state a claim.

18

## CONCLUSION

Plaintiffs' motion for summary judgment [No. 40-1] and defendants' motion for summary judgment [No. 36-1] are granted in part and denied in part as stated in the foregoing memorandum opinion. As discussed in the opinion, the Court has determined certain issues with regard to counts 1 and 2 of the Second Amended Complaint, while other issues regarding these claims remain for trial. Counts 3 and 4 remain for trial. Summary judgment is entered in defendants' favor on count 5. Plaintiffs' motion to dismiss certain counts of the counterclaim [No. 61-1] is granted in part and denied in part; claims 7 and 8 of the counterclaim are dismissed for failure to state a claim. Plaintiffs are ordered to answer the remaining claims within seven days of this order.

MATTHEW F. KENNELLY
United States District Judge

Date: August 21, 2003